May it please the Court, this Section 1983 case is centered upon the arrest and charging of then 73-year-old criminal defense attorney Henry H. Howe based on supposed probable cause drawn solely and exclusively from information which was provided by a single witness, a gentleman by the name of Steven Harold Anderson. I'll get into that in a bit and I don't have a lot of time, but I'd like to focus on one bright line error that the District Court made which we maintain warrants reversal in and of itself. I'm going to direct the Court's attention to pages 9 and 10 of the slip opinion of the District Court granting summary judgment in favor of the defendants. In numbered paragraph 17 of the order on page 9, the Court states that, makes a finding of fact, that there was a background check done on Mr. Anderson. Mr. Anderson just put He submitted a personal history report. A personal history report is right here, Your Honor. I can show it to you. Wait a minute. I want to, let me tell you where I'm starting in this case. Sure. Which, because you won't agree with it, but you can question it or deal with it. What was not, what was not known by anyone and wouldn't have been known in a III report is, in my view, controlling, Hartman is controlling unless the Hartman opinion said we have searched for and been unable to find a favorable opinion the other way. You then just say Hartman is You found the case in your favor that we said we couldn't find in Hartman. Yes or no? Your Honor, we do cite cases in our briefing. They don't, you didn't find a case that we were looking for in Hartman. Your Honor, that's a 2-1 panel decision. We understand. It's controlling. Your Honor, Hartman basically says this. I was just telling you where I was going. You're telling me that Hartman is controlling. All right. Then we go to what was known by Glaze or within her ability to know that was in the record. There was no III report, as I understand it, except there's some, well, maybe they had it. But there's no evidence there was. So all they had was, as far as we know, the personal history report. So you're citing a very general and easily distinguishable cases for the duty to look further. Depends upon the duty to look further when a confidential informant submits a personal history report and discloses to no one's surprise in this universe that he or she had a criminal history. So that's why, to me, you are pushing a very large rock up a very steep hill. Your Honor, I'm aware of the realities of this Court and the decision of law. I want to just say this. The district court said, made as a matter of fact, a finding that there had been a background check. There was none. The Court, and where the Court refers to this is on page 10 of its decision. It says that because there was an FBI number by the ---- It appears that the task force may have run a separate report.  That's not evidence. Well, what that is is a construction of the evidence against us. This is a summary judgment motion. I don't understand. You've got to have evidence as the non-moving party that refutes the Hartman analysis with actual things that were in there. Hartman really didn't change anything in the jurisprudence of this district. No, I don't think so. You're trying to change Hartman. You're arguing it's wrong. Not saying it's wrong, Your Honor. Hartman certainly, and because of U.S. Supreme Court precedent, Hartman can't possibly say that if there is a reason to question evidence, either the credibility of the affiant or the provider or the CI or the nature of the information itself. Then this isn't about going ---- Well, with all due respect, you today and in your brief are arguing a direct appeal from the denial of a Franks hearing. That was your First Circuit case, Tangeray or however you pronounce it. This is a 1983 where either no Franks hearing was requested or none was held. It was done in state court. We don't know why the argument wasn't presented to the state court in a timely fashion. But the record is a void. Well, I want to tell the court, just to make sure the court understands the state court record. The day before the preliminary hearing was to occur, the case was dismissed by motion of the prosecution. There never was a criminal proceeding in reality past the point of a scheduling of a preliminary hearing. How do we even get into a Franks argument? Your Honor, the standard in the case law is interchangeable. When we're talking about ---- Give me a 1983 case that says, well, we're looking at this as though we were taking an appeal from the denial of a Franks hearing. We cite them in our briefs. We cite them in our briefs, both in our main brief and in our reply brief. Tell me now either because I don't, that isn't, I've never seen it. I've never seen a 1983 posing this question. So who are we, what cases are we talking about? Your Honor, I can, I can submit them in a 28-J filing after this argument. I can tell you that in, in both our main brief and in our reply brief, we cite cases that are both Franks cases, well, that are 1983 cases using the Franks analysis. So to, to say that there's somehow different standard, I respectfully submit is not correct. You've had a lot of district courts from outside the circuit. What, what circuit court has ever looked at this question? Your circuit didn't have this question. They had, they had an appeal from ---- Oh, sure. It was a, the, the issue was, and it was a Franks hearing in that case that was involved. Well, they remanded for further remand. Well, they did. In this case, Your Honor, there were genuine issues of material fact relative to the question of whether the defendants should have, well, the red flag went up when this guy raises all these Rules 609 convictions. These are convictions of a type. And by the way, if one compares his ---- Wait, wait, that's the Hartman, that's, that's the stuff that Hartman would control, right? Hartman doesn't say really what this is about. You know his criminal history. I don't. But I think the 609s were what came up after this arrest. The, the, the contriving to, you know. No. That's, and by the way, the guy made up the same story twice before, that the defense lawyer in other cases was, was conspiring to murder an informant. That's what I meant. Well, and, and what's the relevance of that? What's the relevance of that here? No, no, that's the Hartman. That's, that's, we're not going to. What I'm trying to, what I'm trying to. That's an in-bank argument. Well, yeah, it may be. But I'm entitled to make that record. The bottom line, this was a, Hartman was a 2-1 decision. It's a little preserving issue for the in-bank court. I am, and the Supreme Court. Absolutely. And I don't think you're wasting our time this morning to argue that Hartman is wrong. I'm not saying Hartman is wrong. And that's what I'm trying to tell Your Honor today. You're saying Hartman didn't reach this? What I'm saying is Hartman simply said. Hartman didn't eviscerate or vacate U.S. Supreme Court case law that said, if there is a reason to question the veracity of the informant or the, the correctness or veracity of the information, then that's part of the reasonable, the objective standard that applies. Well, let me ask you this. You started by saying that this probable cause was based solely upon the unverified statements of a witness who was of questionable credibility. That's putting it mildly, yeah. But they did verify a number of facts. They verified that there was a plot to kill the CIA. None of. Not, not, now they may not have, you may disagree that your client was part of that plot, but they did. And, in fact, they eventually pled to that charge. Well, Your Honor, first of all, that particular charge they did not plead to, I don't believe. But the bottom line is this. None, only two paragraphs of the affidavit for the, for the arrest warrant affidavit involved Mr. Howe. One of which was complete, completely dependent on Mr. Anderson. And then the other was paraphrase of the wire. But the bottom line is this. There was no corroborating information that was provided in the search warrant affidavit, in the arrest warrant affidavit that related to Mr. Howe. It's all Mr. Anderson. And, in fact, in the record, and I can point it out, Ms. Glaze, the affiant of the task force, admitted he was her only witness. And Mr. Gilpin said, and these are, this is in deposition testimony, Mr. Gilpin testified that the entire investigation began with Mr. Anderson. And when you have a guy that made, and so what's the relevance of the fact that Anderson, who's facing two felony theft cases at this time, and wants to curry favor and make a deal and all that, comes up with this story and it's the same one he had twice before that was not countenanced. But he ruined a man's life. He ruined the last paragraph of my main brief. I would ask that this Court read it. It was devastating to this guy. It was plastered all over media. Never was a trial, never was even a preliminary hearing. Those officers, these defendants, weren't going to stand up at a preliminary hearing and parrot perjured hearsay. Thank you. I'll reserve the rest of my time. Thank you. Mr. Gostad. May it please the Court. My name is Dan Gostad. I'm here representing Barbara Whalen and Delicia Glaze in this appeal. We'd ask that the Court affirm in all respects the district court decision. Wait. You're just arguing for Ms. Whalen? And Ms. Glaze. Okay. Well, we're not going to split arguments are very disfavored in this court. I understand, Your Honor. So you better cover everything. I will try my best. To start with, we do believe that Hartman controls this case. The decision was very clear. Where this Court said, when a detective violates it clearly, whether it does a detective Now, tell me what you think it controls. It controls the information as to whether our clients, my clients, Ms. Glaze was the investigation. Ms. Whalen was the State's attorney. It controls whether there was a duty to do any investigation. And the fact that there may have been this other information Wait a minute. Hartman didn't touch our prior cases which say there can be a duty to do further investigation. Except that if you take a look at the case that we cited, it was Williams. U.S. v. Williams at 477 F3rd 554, where this Court said, Here, there was all kinds of corroboration that was provided that the investigation uncovered. It did start with Mr. Anderson. He wasn't the only evidence in the case. He was the only confidential informant in the case with respect to Howe and the other co-conspirators. But we got the information on January 14th. They commenced the investigation. We enumerated at least 10 items that were corroborated from that investigation. He volunteered to wear a wire. When an informant, the credibility of an informant can be determined from a variety of ways. First of which is Wait. We know as a matter of hindsight he wasn't credible. But at the time At least that's what the State concluded. And I'm not sure that the State concluded that. Would the State, when That warrant would have issued if all of the facts about the prior make-ups had been disclosed? I don't know that because at the time when the affidavit was prepared What's your 60-40 guess? It certainly would have had an impact. However, nobody was aware of that information at the time. And that's Hartman. Nobody had that information available to them. Even if you had looked at the III report they had done on Mr. Anderson during the Howe criminal case. None of those things even appeared because they weren't charged out. But he had a criminal history. He did. And it included crimes that are very relevant as to truthfulness under the rules of evidence. So where do I go on the record to find out exactly what Ms. Glaze and or Ms. Wayland knew about the criminal history? You look at the, and I wrote that down, the criminal history report, it's in plaintiff's appendix 57 to 59 where Mr. Anderson did self-report those criminal activities. That seems to be some level of credibility when he tells us these are the criminal activities. Excuse me? Reported to whom? Reported to my client. It was that at plaintiff's 57 to 59 is the confidential informant sign-up sheet where they ask for the criminal history. Okay. But it's not an oral report in an interview. It was a report that Mr. Anderson provided to my client. Did Ms. Glaze, she was deposed I assume? Yes. Did she testify that she read that? It was her handwriting. The report was completed in her handwriting and then Mr. Anderson. It was an interview. It was at the time when he was signed up. It's part of the process to sign up the confidential informant is to get this information. It's a form that the State of North Dakota has prepared for confidential informants. The other thing that Mr. Thompson said, there wasn't any background check, except that Mr. Gilpin testified, and this is at plaintiff's appendix 92 where he said there's an FBI number on that confidential informant sheet. That tells me there was some background check that was done. We don't have a record of it, of the background check that was done, but it at least is evidence that there was a background check done. What's the difference? Is there a difference between running an FBI criminal background check and a triple I? What exactly is this triple I report? I think a triple I report is much more detailed. Who provides it or how do you get it? The way I understand it is there's only a few individuals within the law enforcement division that can get this. Ms. Whalen testified that she doesn't have access to it, but I believe the police officers would have access to this triple I report. I think what the testimony was is that they did at least a North Dakota background check, which may not have been as detailed as the triple I report. But going back to the argument here is we have repeatedly said that we had, when you're a confidential informant, you can determine credibility and reliability based upon a number of factors, face-to-face meetings with the confidential informant. We had a number of them with Mr. Anderson. We corroborated evidence. This Court has said even the most innocent of facts that are corroborated can lead to credibility and reliability. Who's testifying now? What's documentary and what was in the affidavit? As far as the corroboration is concerned? We had all of these people who talked to Anderson and we knew all of that. It may well be true, but we're dealing with an appellate record. If you take a look at the affidavit from Ms. Glacier, she outlines all of the information that had been provided. Also in the record, I don't have the exact page, but Ms. Glacier also provided an affidavit that was undisputed as to the various items that were corroborated throughout the investigation. The other thing is, is that nowhere does Mr. Howe state that there's anything falsely stated or misstated in the affidavit. He may disagree with what Mr. Anderson told us or may disagree with respect to Mr. Anderson's credibility, but there is nothing in the affidavit. He doesn't point to nothing that says, gee, that was a false statement. Ms. Glazer received this information from Mr. Anderson or received this information from the investigation and she misstated it. What about this question of whether the after acquired complete transcript of the January 24 meeting was different than what was in the affidavit? I don't think it is different than what's in the affidavit. I think it accurately depicts what was said. Mr. Howe said, in his words, if we get the first one to go away, it's a house of cards and everything folds up. Then the next communication discussion was about the timing as to when to get rid of this confidential informant that was a key witness in a case that he was defending. Where do I go for the page numbers in this 35-page transcript? I mean, I started reading the thing. It's hopeless. You guys didn't give us a lot of help here. We provided, there is a thumb drive that we provided. There is a drive that we provided to the court and we cited to the exact time as to when this communication occurred. It's also in Ms. Glaze's affidavit where she describes what was discussed. I don't think that... I read, I'm a document person. You give me a thumb drive and the odds of me reading it before oral argument are slim and none. And that's why we provided it to you in our brief in citing to exactly where to find the... Then I've got a 35-page transcript, I guess, from the appellant. And I don't think there's anything that's different than what's in that affidavit. How do I correlate your sites and what I'm reading? Because through Mr. Howe's own deposition testimony where he said there's nothing in the affidavit that was inaccurate or misstated. My problem is the long paragraph before the description of the meeting in the affidavit contains a lot of these things that Anderson apparently told law enforcement before the January 24 meetings. Correct. So... There isn't that... I don't know which we're talking about and I don't know what the corroboration of those earlier conversations was other than, I guess, the affidavits. There was corroboration through their reports that showed what was corroborated throughout the investigation. That's been cited in our brief. It's also been cited with respect to the affidavit. And that's undisputed. I thank you for your time. I'm into Mr. Nikolai's time and I'll defer to him. Thank you. Thank you. Mr. Nikolai. Good morning. Thank you, Your Honor. I'm Jim Nikolai. I represent the state defendants in this case, Steve Gilpin and Scott Kraft. I'd first like to make a point about the splitting argument time. Political subdivisions are represented by the North Dakota Insurance Reserve Fund. You don't have to. Okay. No, you don't have to go there. So, Mr. Thompson or Mr. Godstead can't speak for the state defendants and I can't speak for the county defendants. But I will reserve my comments to what I think are the important distinctions or the argument that's most relevant to the state defendants. And that is that Mr. Thompson wants this court to extend liability to non-signatories to the arrest warrant based on nothing more that they work with the affiant. They're coworkers. And there are no cases that go that far, even the cases that he cites. And this court said in Cooper that we are not extending liability. The second point that I'd like to make has to do with qualified immunity. Mr. Thompson has never made an attempt to show facts, cases with similar facts to this case for purposes of qualified immunity. And there's a whole list of those types of facts that he would have to show. We have independent evidence of the crime through the jailhouse letters or the conspiracy. We have multiple corroborating facts of Mr. Anderson that he provided. And we have the crime caught on tape. And we have co-defendants to the conspiracy pleading guilty. There's no evidence whatsoever that either Ms. Glaze as the affiant or anyone else had actual knowledge of the information as far as what isn't really criminal background but goes beyond his criminal background. And for purposes of qualified immunity for my clients, we have their non-signatories to the arrest warrant affidavit. So you'd have to find a case with all those things that are similar to this case and then have courts say it's clearly established that all those facts still add up to a Fourth Amendment violation. The bottom line in this case is that what's the best way to protect an individual's Fourth Amendment rights when you, you know, irrespective of whether you have doubts about credibility or not, make him wear a wire. That's what happened in this case. They made him wear a wire. And I apologize to the court if we made it difficult to follow, but there is no difference between the full transcript and the parts of the transcript that matter. We provided a thumb drive to the court. We provided time stamps to the court that have the relevant parts. Mr. Howe, instead of in a situation where you have a criminal defense attorney knowing clients are conspiring to kill somebody or harm them, saying, wait, wait, wait a minute, you guys can't do that and you can't be telling me about that and I can't be advising you, what does he say? Well, should we do it five days before trial? Yeah, no, you don't want to do that because it makes it look suspicious. Mr. Howe, there's no fabrication here. The evidence against Mr. Howe came straight out of Mr. Howe's mouth. And I agree. Hartman controls this. Tangway, Tangway was a case where officers had serious doubts and did nothing. The officers did more than nothing here. They made him wear a wire. They corroborated numerous independent facts. This is not a did-nothing case, irrespective of whether a background check was run or not. And we'd ask the court to affirm the district court. Thank you. Thank you. Thank you. In our reply brief, we go through and specifically cite the relevant portions of the transcript and also the audio. Page three of our reply brief. By the way, the transcript is a rule 1006 summary of the audio recording. The transcript was made by defense counsel. Everybody agrees it's accurate. And it can be tested. Its accuracy can be tested by listening to the audio. We're fine with the audio. I would urge this panel to listen to the audio. Well, let me ask you this. As I understand, under Hartman and a whole witney of cases before Hartman, in order for you to succeed, you have to show that facts that would have made probable cause or that the affidavit was either inaccurate or omitted facts that would have resulted in a finding that there was no probable cause for the arrest warrant. Are there any facts that were omitted from the affidavit other than the schemes, and I think it was Wisconsin where Mr. Anderson had come up with a similar type of stories? Your Honor, yes. There was no reference to Anderson's criminal history. None. Zero in the affidavit. And looking at page 57 of our appendix, volume one, it's only what Mr. Anderson disclosed, self-disclosed, if one compares the criminal history that was done actually based on a triple I that Ms. Whalen did in March, more than a month after Mr. Howe had been charged, you'll see that there were far more charges than these admittedly Rule 609-type offenses of theft by swindle, false representation, check forgery, bigamy, aggravated forgery. We're okay. I'm okay with Hartman, Your Honor. I understand you were on that panel, and I respect that. But I want to first of all say, and I get three seconds, can I finish the thought? Of course. Thank you. There's nothing unusual about Hartman, and we discuss beginning at page 24 of our brief why Hartman does not foreclose our argument. In no way does Franks authorize an officer or law enforcement officers, a fiance, to have a no-account ostrich-like behavior and practice by when they're advised of these Rule 609 crimes, and then they say they did a background check simply because there's an FBI number in a box. Okay. If that's the case, they would have known all that. They would have known all that. Thank you, Your Honor, for your indulgence. All I can say is Hartman isn't the first time I encountered this. I encountered it probably over 25 years ago in a case called Ozar, the question of omissions in an affidavit, and when do they defeat a warrant. So Hartman is the tale of a long dog. Sure. But what they did know, just what they did know, if they did an FBI background check, and just based on his self-reporting. I understand that. I mean, they knew that. That's what they actually knew. So we don't need what they should have done. Wait, what did they actually know? They actually knew that. They didn't know the III information. Well, they say that they did an FBI background check because there's an FBI number in a box. What's in it? That's your obligation in discovery. Your Honor, nobody had it. The case is submitted. Nobody had the FBI report. Thank you. The defendants did. That's Hartman.